UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAY STOKES,

        Petitioner,

        v.          CAUSE NO.: 3:19-CV-457-JD-MGG

WARDEN,

        Respondent.

## OPINION AND ORDER

Jay Stokes, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Indiana State Prison (ISP 18-08-0156), in which he was found guilty of engaging in an unauthorized financial transaction in violation of Indiana Department of Correction ("IDOC") disciplinary offense B-220. (ECF 1.) Among other sanctions, he lost 30 days of earned-timed credits. (*Id*.)

The charges were initiated on August 14, 2018, when IDOC Investigation and Intelligence Analyst Brittany White wrote a conduct report stating as follows:

> On 8/14/2018, at approximately 7:10, I, Brittany White – I&I Analyst, was reviewing a live phone call between Offender Jay Stokes DOC #113391, and Robin Reyes. During my review, I heard Ms. Reyes give Offender Stokes a series of numbers. Below is information added on 10/12/2018 at approximately 9:40 due to rehearing, per the IDOC Staff Counsel – Robert Allega.
>
> At the beginning of the call, Ms. Reyes tries to give Offender Stokes numbers referred to as a "phone number" but the offender spoke over her, as to stop her from speaking. At the end of this call, Ms. Reyes is asked by Offender Stokes, "Did you get that?" At first, Ms. Reyes does not understand the request and then leaves to go get the number. Offender Stokes came to I&I and provided I&I Staff with two numbers which he

> claimed to be phone numbers. Per Offender Stokes on a later date, I&I Staff called to verify the numbers to which one was not a verifiable number and the other provided was for a woman from out of state claiming she has never heard of or spoken to Offender Stokes. On October 12, 2018, at approximately 9:30 a.m., I, Brittany White, ran the numbers provided through a Bin Database with the first six numbers of the provided numbers and verified that if the 1 (the first number in the sequence) is removed, the number is a verified debit number. This suggested that the Offender and Ms. Reyes were trying to simulate a phone number by adding the one in front of the series of numbers.

(ECF 5-1). Confidential information from Analyst White's investigation was also submitted. (ECF 7.)

On October 17, 2018, Mr. Stokes was formally notified of the charge.[1] (ECF 5-2.) He pled not guilty and requested a lay advocate, and one was appointed for him. (*Id.*; ECF 5-3.) He requested Investigator Bill Lessner as a witness to state that he "came to him and gave him 2 #'s which were phone #'s, which [Investigator Lessner] called to verify they [were] actual phone #'s." (ECF 5-2.) As for physical evidence, he requested that the hearing officer "relisten to audio of the 6 numbers given, to verify they aren't green dot #'s."[2] (*Id.*) He also requested that the hearing officer "verify how many #'s in a green dot[.]" (*Id.*) A statement was obtained from Investigator Lessner, who stated as

---

[1] Documents contained in respondent's confidential Exhibit H (ECF 7) reflect that Mr. Stokes was originally charged and found guilty shortly after the phone call occurred, but the agency opted to grant him a new hearing based on his administrative appeals. The second time, more detail was added to the conduct report to give context to the charge that Mr. Stokes had received numbers during the phone call that were believed to be a debit card number. The court notes that double jeopardy principles do not apply in the prison disciplinary context. *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996).

[2] "Green Dot" is a type of prepaid debit card. *See Swann v. Superintendent*, No. 3:14CV1920-PPS, 2015 WL 1208879, at *1 (N.D. Ind. Mar. 17, 2015).

follows: "Stokes gave me two sets of numbers to check. I do not know if these numbers were the same ones he was given a conduct for." (ECF 5-4.)

On October 19, 2018, a hearing was held on the charge. (ECF 5-5.) Mr. Stokes stated as follows in his defense: "How can this be different from the first CR. How can you check #'s by changing them. I don't understand this." (*Id.*) The hearing officer stated that he listened to the audio recording pursuant to Mr. Stokes's request and that it "supports CR in its entirety." (*Id.*) Based on the conduct report, the audio recording, evidence from witnesses, and the confidential information submitted from Analyst White's investigation, the hearing officer found Mr. Stokes guilty. (*Id.*) He lost 30 days of earned-time credits. (*Id.*) His administrative appeals were denied. (ECF 5-6.)

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Stokes raises three claims in his petition: (1) that the evidence of his guilt was insufficient; (2) that he was denied the right to present evidence in his defense; and (3) that the hearing officer was not impartial. (ECF 1 at 2-3.)

Turning first to the sufficiency of the evidence, there only needs to be "some evidence" to support the hearing officer's decision to satisfy due process. *Hill*, 472 U.S. at 455. As the Seventh Circuit has explained:

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. . . . It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Mr. Stokes was found guilty of violating B-220, which prohibits the following:

> Engaging in or possessing materials used for unauthorized financial transactions. This includes, but is not limited to, the use or possession of identifying information of credit cards, debit cards, or any other card used to complete a financial transaction. This includes the discussion of engaging in unauthorized financial transaction(s) with any other person.

(ECF 5-8 at 6.) The conduct report, the confidential information from the investigation, and the audio recording, which the court has reviewed in its entirety, provide some evidence that Mr. Stokes was engaging in an unauthorized financial transaction when he obtained a debit card number from Ms. Reyes. Although Mr. Stokes protests that he is innocent and that Analyst White's account was not credible, it is not the province of this court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652.

He next claims that he was denied the right to evidence. (ECF 1 at 2.) The record reflects that at screening, he requested a witness statement from Investigator Lessner, which was obtained and considered. (ECF 5-4; ECF 5-5.) He also requested that the hearing officer listen to the audio recording, which he did. (ECF 5-5.) He appeared to

4

request that the hearing officer conduct his own inquiry to determine "how many #s in a green dot." (ECF 5-2.) Prisoners have a right to submit relevant exculpatory evidence, but they do not have the right to the creation of evidence that does not already exist. *Wolff*, 418 U.S. at 556. Additionally, there is material from Analyst White showing that she verified through an external source that the numbers mentioned during the phone call were a working debit card number. (ECF 7.) He has not shown that his rights were violated.

Within this claim, Mr. Stokes also claims that the hearing officer refused to consider documentary evidence that exonerated him from the charge. (ECF 1 at 2.) He appears to be referring to Ms. Reyes' phone bill, which he claims to have brought to the hearing to show that 612-213-5893 was a working phone number, as the bill listed incoming and outgoing calls to that number. (*See* ECF 5-6 at 2-3, 7.) Prisoners only have a right to present exculpatory evidence. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). The phone bill would not have exculpated him from the charge, as 612-213-5893 is not one of the numbers mentioned during the phone call with Ms. Reyes. He has not demonstrated a due process violation.

In his traverse, he appears to complain that the numbers mentioned during the call with Ms. Reyes were not turned over to him during the hearing process. (ECF 12-1 at 2.) The court finds this argument unpersuasive, as Mr. Stokes clearly had the numbers in his possession; Ms. Reyes gave them to him during the phone call, and it

can be gathered from the audio recording that he was writing them down as they spoke. To the extent he is arguing that they should have been given to him a second time because the hearing officer considered them, he did not have a right to personally review all the evidence considered by the hearing officer. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). That is because "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *Id.* The court has reviewed the audio recording and the confidential information from Analyst White's investigation, which included the numbers at issue and verification that they constituted a working debit card number. The court concludes that disclosure of this information to Mr. Stokes could jeopardize institutional safety and reveal investigative techniques. *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Indeed, giving Mr. Stokes a working debit card number would defeat the purpose of disciplinary rule B-220. Further, there is nothing in either the audio recording or the confidential information submitted by Analyst White that would have aided in Mr. Stokes's defense. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (denial of evidence is considered harmless unless the evidence would have aided the inmate's defense). He has not established a due process violation.

Finally, Mr. Stokes claims that the hearing officer was not impartial. (ECF 1 at 3.) Prison adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decisionmaker in the case. *Id.* Due

process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

There is nothing in the record to suggest that the hearing officer was involved in any way in the events underlying the charge. Mr. Stokes appears to argue that the hearing officer was biased because he found him guilty even though the evidence was insufficient. An adverse ruling does not establish improper bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, as outlined above, there was constitutionally sufficient evidence in the record to support the hearing officer's decision. Mr. Stokes has not overcome the presumption that the hearing officer was impartial.

For these reasons, the court DENIES the habeas corpus petition (ECF 1), and DIRECTS the clerk to enter judgment in this case.

SO ORDERED on August 28, 2020

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT